CRAIG *v.* CRAIG *et al.*

(In Banc.   Jan. 26, 1942.)

[5 So. (2d) 673.   No. 34787.]

272

Buntin & McIntosh, of Gulfport, for appellant.

Carl Marshall, of Gulfport, for appellees.

274

Argued orally by **Carl Marshall,** for appellees.

**Griffith, J.,** delivered the opinion of the court.

Appellant was the senior carpenter engaged with two others in the construction of a small, one-story frame building. When the structure had reached the point when the window frames were to be put in place, appellant, assisted by one of the other carpenters, placed the frame here in question in a temporary position, and nailed it loosely as placed to await the checking up or final determination of the proper alignment of the frames, this to be done by one of the appellees, who was one of the contractors and the superintendent of the work and who went from place to place in the superintendence of this and another construction work then being done by them.

Soon after this temporary placement, the superintend-

ent checked and made the necessary measurements, and as a consequence determined that the frames as placed were in the correct position, but the three carpenters were then working on the ceiling, and instead of calling one of them at that time to nail the frames firmly and permanently in place, the superintendent decided to wait on this until the carpenters had finished with the ceiling.

Three or four days later, and when the ceiling work had been completed so far as then intended to be done, the superintendent directed appellant and the other carpenters to go to work on the siding, and particularly directed appellant to place an angle strip about 18 inches from the bay-window frame. To do this appellant took a step-ladder and placed it adjacent to the outside wall, and when on the ladder, he took hold of the window frame in order to steady himself in his place on the ladder, whereupon the window frame came loose, with the result that appellant fell from the ladder, the frame fell upon him, and he was seriously injured.

Appellant made proof that it is and was the custom among those engaged in the construction of buildings to nail into place permanently and securely each and every part of the structure as soon as placed in its proper position and its position has been determined as being correct, and that it is the custom or habit of carpenters at work on a building to rely upon the assumption that this has been done as the work progresses and to use those parts as supports and somewhat as ways and means in the doing of the successive parts of the work. Appellant says that, in view of this, he had the right on the occasion in question to rely upon the assumption that appellees had made this window frame permanently secure and to lay hold of it to support himself when thereafter he was at work thereabout—that the failure of his employer to make the frame permanently secure constituted actionable negligence, and he instituted this action to recover damages for his injury. A peremptory instruction for the defendants was granted by the trial court, the correctness of which is challenged by this appeal.

From whatever angle may be the approach, or whatever the theory pursued, the argument of appellant emerges into the contention that the negligence complained of is that the employer failed of a legal duty to furnish his employee a safe place to work. But it has been long settled in this state, in accord with the authorities elsewhere, that the obligation of an employer to use reasonable care to furnish his employee a reasonably safe place in which to work has no application to the construction and repair of buildings, and the like, where the risks and dangers are those which arise during the course, or as a part of the progress, of the work and which relate directly to features which are, or become, integral portions of the building or structure itself—and which do not involve hidden dangers against which the employee cannot protect himself and at the same time do his work. Among the cases in which the rule has been affirmed and applied are City of Tupelo v. Payne, 176 Miss. 245, 168 So. 283; Gulf, etc., R. Co. v. Brown, 143 Miss. 890, 108 So. 503; International Shipbuilding Co. v. Carter, 121 Miss. 103, 83 So. 413, and the cases cited in those opinions. And see 39 C. J. p. 351 and 35 Am. Jur. p. 615.

Whether this rule is based upon the conclusion that in the particular situations mentioned an adherence to it, by which each employee is made in a large measure his own safety inspector, will in the aggregate produce better results in the avoidance of injuries, or whether if to impose upon the employer the entire duty of inspection, which to be effective would have to be constant and ubiquitous, would be an unreasonable requirement, or whether it has been considered impracticable to attempt to administer or to adjudicate upon a rule if formulated otherwise than as above stated, or whatever has been the ground or grounds for the establishment of the rule, we need not now reconsider, further than to observe that in them there is sufficient of substance to preclude us from saying that the rule as established is manifestly wrong or mischievous in operation; wherefore, it is our duty to maintain it, unless and until altered by the legislative department.

And what appellant urges here, in its ultimate analysis, although persuasively·presented, is that we should engraft upon the rule the qualification that whenever or wherever, in the progress of the work, a particular sleeper stud, brace, frame, window casing, joist, rafter, or other integral part of the structure, has been placed in the position where it is to permanently remain, and its position of permanency has been ascertained as such, the employer must then and there see to it that the part integral is so securely and permanently fastened into place that it may thereafter be used, and continued to be used, by the employee as if part of a safe place to work—the result of which would be that when a building is ninety percent complete, it would be in the proportion of ninety percent within the rule of a safe place to work. Such a qualification would be to submerge the rule as regards works of construction or repair and to substitute in its place another under the guise of exception. This we cannot legitimately do. No authority for such a sweeping qualification is cited by appellant, nor have we found any such in our own investigation.

There are two other grounds presented and argued by appellees which in themselves might lead to an affirmance, but we do not pursue them inasmuch as what has already been said is sufficient to dispose of the case.

Affirmed.