MAY *v.* VARDAMAN MANUFACTURING COMPANY, INC., et al.

No. 42343          June 11, 1962          142 So. 2d 18

*Jeff Busby,* Houston; *Charles W. Busby,* Jackson, for appellant.

*Daniel, Coker & Horton,* Jackson; *Armis E. Hawkins,* Houston, for appellees.

ARRINGTON, J.

The appellant, Rosie May, plaintiff below, the widow of Ebin Lee May, deceased, filed suit in the Circuit Court of the First Judicial District of Chickasaw County against Vardaman Manufacturing Company, Inc., and J. L. Kendall to recover damages for

the alleged wrongful death of her husband as the result of the collapse of a building upon which he was working as a carpenter. From an adverse judgment, appellant appeals.

The record discloses the following: In October 1959, the Vardaman Manufacturing Company, Inc., acting through its executive vice president, Gatlin Gilder, entered into an oral contract with J. L. Kendall to construct two buildings for the corporation. One of the buildings was to be 150 feet long and 60 feet wide; the other, a shed 150 feet long and 60 feet wide, both buildings to have a concrete base; the smaller building to have a concrete base eight feet deep for the reason that this building was to be used to house heavy machinery. J. L. Kendall had constructed a number of buildings for the Vardaman Manufacturing Company prior to entering into this contract and he was told to build it "like the rest of them." The larger building had been completed and a barrel roof was being put on the smaller building or shed by Ebin Lee May and other persons when the building collapsed and resulted in the injury and death of May.

In the declaration the appellant alleged that "Gilder, manager and agent of the Vardaman Manufacturing Company, Inc., who undertook to draw and furnish the architectural plans and specifications for the construction of the building . . . . . , was not a competent architect to perform that service; that he lacked training in architecture to provide plans and specifications for the construction of said building; that he did not have the ability and knowledge to provide plans and specifications for the safe construction of the building on which Ebin Lee May, husband of plaintiff, was working. That it was negligence for the Vardaman Manufacturing Company, defendant, to adopt plans and specifications made by its manager, Gatlin Gilder, when he was incompetent, for the construction of said building, which plans were

unsafe and inadequate, which act of negligence on the part of defendant was the direct and proximate cause of death of Ebin Lee May, who was killed in the crash of the building aforesaid, which plans were inadequate, unsafe, and dangerous.''

The bill also alleged that J. L. Kendall, the contractor, was guilty of negligence based on the fact that he did not exercise ordinary care to furnish his servant a reasonable safe place in which to work.

Vardaman Manufacturing Company answered and in part admitted that Gilder, its manager, was not a competent architect; that he had no experience and training to provide plans and specifications for said building, and denied that Gilder furnished, or attempted to furnish, such plans; that he engaged the services of the defendant, J. L. Kendall, for the very reason that Gilder lacked the experience in such matters, and denied that such plans and specifications were adopted by it, and that such plans were made.

The appellee Kendall filed an affirmative defense that the deceased was an experienced carpenter and builder, and had worked regularly on said building from the beginning of its construction; that the deceased assumed the risk pertaining to the work. It was admitted in the pleadings filed by plaintiff that Ebin Lee May was an employee of J. L. Kendall, an independent contractor, who was constructing the said building for Vardaman Manufacturing Company.

The evidence in this case shows without dispute that the contract entered into was oral and that the building was to be built like one of the other buildings previously constructed by Kendall. No plans or specifications were furnished to Kendall by Gilder. The evidence also shows that one change in the building which collapsed was made by Gilder, and that was to wall up two sides of the shed to protect some machinery. It is admitted that May was an employee of Kendall, who hired him and paid

him, and that all the employees were under the control of their employer, Kendall. See Regan, et al. v. Foxworth Veneer Company, 178 Miss. 654, 174 So. 48, and authorities there cited.

The appellant argues that where one serves as his own architect or fails to engage a competent architect to design or plan his building that he is guilty of negligence, and relies on the case of Looker v. Gulf Coast Fair, 81 So. 832 (Alabama). In this case the plans for the construction of a grandstand had been prepared by an architect. The stand collapsed while under construction and injured Looker. The appellant relies on dicta from that opinion. We do not agree with this dicta and decline to follow it in this case. In our opinion, this was not the type or kind of building to require the services of an architect. The record shows that Kendall had been in the construction and building business for about ten years; that he was experienced and had constructed a number of buildings for the Vardaman Manufacturing Company and obviously his work was satisfactory or Gilder would not have contracted with him to construct these two buildings. Therefore, we are of the opinion that Vardaman Manufacturing Company was not guilty of negligence.

In the case of City of Tupelo v. Payne, 176 Miss. 245, 168 So. 283, the Court held that the master must use ordinary care to provide a reasonably safe place for a servant to work is not applicable where progress of work constantly changes conditions as regards increase or diminution of safety and that hazards thus arising are regarded as ordinary risks assumed by the servant. The Court quoted from the rule announced in Gulf, Mobile and Northern Railroad Co. v. Brown, 143 Miss. 890, 108 So. 503, as follows:

"Appellant's position is that the obligation of the master to furnish his servant a reasonably safe place to work has no application to the facts of this case

because appellee was employed, with others, to repair and make the very place safe, the unsafety of which caused his injury; that therefore he knew the place was unsafe and assumed the risk of such unsafety. The rule requiring the master to use ordinary care to provide a reasonably safe place for his servant to work is not applicable to a case in which the very work which the servant is employed to do is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards arising thus are regarded as being the ordinary dangers and risks of the employment which are assumed by the servant when he accepts the employment. (Citing authorities) In Kentucky Coal Co. v. Nance, supra, the Court said: 'Manifestly, this duty of providing a safe place is dependent upon the character of the work to be done there. Hence, when that work is one of construction, reconstruction, destruction, or repair, the risks which are incident to such places and kinds of work are assumed by the servants there employed'.'' See also Craig v. Craig, 192 Miss. 271, 5 So. 2d 673.

When the appellant rested her case, the appellees made a motion to exclude the evidence and for a directed verdict, which motion was sustained by the court. Under the above cited authorities, we conclude that the judgment of the court below was correct, and the cause is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Rodgers, JJ.,* concur.