222 So.2d 406 (1969)
UNITED ROOFING AND SIDING COMPANY
v.
Robert SEEFELD.
No. 45333.
Supreme Court of Mississippi.
April 28, 1969.
Boyd, Holifield & Harper, Laurel, for appellant.
William H. Odom, Maxey & Clark, Laurel, for appellee.
JONES, Justice:
Appellee, Robert Seefeld, hereinafter referred to as Seefeld, sued appellant, United Roofing and Siding Company, hereinafter referred to as the Company, in the Circuit Court of Jones County, alleging that he was injured as a result of the negligence of the Company while doing the plumbing on a construction job the Company had contracted and was performing. He stepped on a nail which went through his shoe and foot and was seriously injured. From a judgment against it for the sum of $17,000, the Company appeals to this Court. We reverse and enter judgment here for the Company.
Several assignments of error are presented, but it is necessary to discuss only one; that the court erred in refusing a peremptory instruction.
Seefeld was a plumber who had received his journeyman's card in 1948. He had been engaged in business as a plumber for twenty years or more, and had performed a number of such jobs for the Company, including five or six during the year he was injured, but prior to the injury.
The Company engaged in building homes, repairs thereof, and remodeling buildings. On October 7, 1965, it was constructing an addition to a blockhouse on Central Avenue in the City of Laurel. Seefeld stated that he had "hired out" to the Company to do the plumbing. Several carpenters were engaged in and about the work at the same *407 time. Seefeld generally and substantially testified regarding the occurrence as follows: He was putting drain lines and water lines into the building. Cast iron is installed by sealing joints with lead and oakum. For this purpose he had a ladle of hot lead in his hand, and with it walked to the opposite wall near the point where he was to pour the lead. There was no flooring, only the joists had been installed about twenty to twenty-four inches above the ground. Seefeld had cleaned the ground underneath the joists so that it was perfectly clean. This was before noon, and at noon, he stayed home and listened to or watched a World Series ball game until about three o'clock or later. When he returned, carpenters were framing and nailing siding on the building within a few feet of where he was hurt. They left before he was injured. He walked across the joists to where he was to pour the lead and stepped to the ground on a nail which entered the ball of his foot. It was a sixteen-penny nail through a board such as was being used in the construction. He did not see the nail before he stepped on it, but relied on the fact that he had cleaned the ground before noon. Such reliance, if any, was in spite of the fact that he saw the carpenters there working when he returned after the ball game and prior to the time he was injured. When asked what kind of a board the nail was in, he stated that it was a piece of new lumber, and he would say it was a two by six or two by eight. The foot gave him considerable trouble.
He frankly admitted he was an experienced plumber who had previously done work of this type many times; that usually there was a lot of debris around such work, including boards with nails in them, old brickbats and other things; and that such was a common, ordinary matter on a remodeling job.
It is undisputed that the Company was engaged in the construction of an addition to the building which required carpenters as well as plumbers, and that it was in the nature of a general construction job.
Seefeld knew, or should have known, and would be charged with knowing, that even though a place had been cleaned before noon, much debris could accumulate in a short while after the carpenters returned to work. He saw the carpenters working on the framing and siding of said addition when he returned and before he was injured.
There may be some question as to whether Seefeld was an employee of the Company or an independent contractor. If he were an employee, and the Company was not under the Workmen's Compensation Act, we would run headlong into the holding of this Court in Craig v. Craig, 192 Miss. 271, 276, 5 So.2d 673, 674 (1942), where Judge Griffith, as an organ of the Court, made this statement:
But it has been long settled in this State, in accord with the authorities elsewhere, that the obligation of an employer to use reasonable care to furnish his employee a reasonably safe place in which to work has no application to the construction and repair of buildings, and the like, where the risks and dangers are those which arise during the course, or as a part of the progress, of the work and which relate directly to features which are, or become, integral portions of the building or structure itself,  and which do not involve hidden dangers against which the employee cannot protect himself and at the same time do his work. Among the cases in which the rule has been affirmed and applied are City of Tupelo v. Payne, 176 Miss. 245, 168 So. 283; Gulf, etc., R. Co. v. Brown, 143 Miss. 890, 108 So. 503; International Shipbuilding Co. v. Carter, 121 Miss. 103, 83 So. 413, and the cases cited in those opinions. And see 39 C.J. p. 351 and 35 Am.Jur. p. 615.
Certainly there was no hidden danger here against which Seefeld could not protect himself. All he had to do was look before he stepped. The construction job was not inherently dangerous. As to an employee, it is not an assumption of risk, but *408 is an absence of duty on the part of the master.
A case involving an employee who stepped on a nail, and for which the master was found not liable on a construction job, is Decatur v. Charles H. Tompkins Co., 58 App.D.C. 102, 25 F.2d 526, 60 A.L.R. 402 (1928). In an annotation following that decision, the following cases, also involving non-liability to the employee for stepping on nails, are cited: Merchant v. Mickelson, 101 Ill. App. 401 (1902); Wells Bros. Co. v. Manion, 140 Ill. App. 527 (1908); Armour & Co. v. Dumas, 43 Tex.Civ.App. 36, 95 S.W. 710 (1906); Lumbert v. Gurney, 222 Mass. 235, 110 N.E. 275 (1951), involving a screwhead rather than a nail; the only case cited contra is Bone v. Fruin-Colnon Contracting Co., 191 S.W. 1062 (Mo. App. 1917), and the annotation says that case is against the weight of authority.
We are unable to see any substantial reason why this same rule should not apply to an independent contractor who is engaged in doing a part of the construction at the same time carpenters, masons and others are engaged therein. As a matter of fact, it has been applied by this Court to the employee of an independent contractor in May v. Vardaman Manufacturing Company, Inc., 244 Miss. 261, 142 So.2d 18 (1962).
Our statute [Section 1456, Mississippi Code 1942 Annotated (1956)], abolishes the assumption of risk only as between master and servant where the master is negligent. It does not abolish the assumption of risk by an independent contractor. Southern Natural Gas Co. v. Wilson & Index Drilling Co., 304 F.2d 253 (U.S.C.A. 5th Cir.1962); McDonald v. Wilmut Gas & Oil Co., 180 Miss. 350, 176 So. 395 (1937); Runnels v. Dixie Drive-It-Yourself System Jackson Co., 220 Miss. 678, 71 So.2d 453, 46 A.L.R.2d 397 (1954).
In 41 American Jurisprudence 2d, Independent Contractors, section 28 page 785 (1968), the rule applicable here is stated:
As an exception to the general rule requiring the owner or occupier of premises (the contractee) to furnish a safe place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair. Closely related to this exception is the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees "assumed the risk."
In 35 American Jurisprudence, Master and Servant, section 299, pages 722-23 (1941), it is stated:
The injuries for which an employee is barred from recovery by virtue of the doctrine of assumption of risk include but, according to the general accepted statement, do not extend beyond those which result from the "ordinary" risks of the employment or such as are "incident" thereto. An assumption of risk merely by virtue of the contract of employment embraces such perils, hazards, and dangers as are ordinarily and normally incident to or a part of the employment in question and of which the employee has knowledge, actual or implied, or of which it may be said that he is presumed to know. Under the head of "ordinary risks" are classed all those dangers of perils ordinarily incident to the conduct of the particular business in which the employee engages  those which exist after the employer has done everything that he is bound to do for the purpose of securing the safety of his employees. * * *
A case in point is Cohen v. New Jersey and N.Y.R. Company, 11 N.J. Misc. 483, 166 A. 715 (1933). In that case it was held that an independent contractor employed to *409 rebuild the roof and install an incinerator in a tenement building being repaired assumed the risk of stepping on a nail among other rubbish on the floor. Other contractors were employed on the building in that case, and the nail and debris apparently came from their work. The Court there held the independent contractor assumed the risk.
In this case, Seefeld, being an experienced man, evidently understood he, himself, was to do the cleaning of the area where he worked because he did clean it before noon. However, for some reason, he did not even look for debris when he stepped from the joists, although he had seen the carpenters working within a few feet of the spot where he was injured after returning from watching the ball game.
The case is reversed and judgment entered here for the Company.
Reversed and judgment here for the appellant.
GILLESPIE, P.J., and BRADY, INZER and ROBERTSON, JJ., concur.