# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 99-60131

CHRISTOPHER STOKES and
BETTY STOKES,

Plaintiffs-Appellees,

versus

EMERSON ELECTRIC CO., ETC., ET AL.,

Defendants,

EMERSON ELECTRIC CO., U.S.
Electrical Motors Division,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

July 17, 2000

Before POLITZ and DAVIS, Circuit Judges, and RESTANI,[*] Judge.

POLITZ, Circuit Judge:

Christopher Stokes filed suit against Emerson Electric Co. for injuries he

_____

[*]Judge of the United States Court of International Trade, sitting by designation.

sustained as a result of an allegedly defective condition at the Emerson plant.[1]

Emerson appeals an adverse judgment following a jury verdict. For the reasons

assigned, we vacate and remand.

## BACKGROUND

Stokes is a journeyman electrician and a ten-year employee of Carter Electric

Company, an independent contractor that provided services to Emerson's plant in

Philadelphia, Mississippi on a regular basis. Both Stokes and John Carter, the owner

of Carter Electric, had worked on the site and were familiar with the plant. At the time

of Stokes' accident Carter Electric was under contract with Emerson to install an

emergency generator. Carter Electric had a scissor lift[2] which it frequently used on the

Emerson job site. When Carter Electric was not working on the Emerson plant, its

scissor lift remained there unless needed on other Carter Electric jobs.

On the date of the accident, Stokes was dispatched to the Emerson plant to pick

up the scissor lift and take it to another job site unrelated to its Emerson contract.

Stokes located the scissor lift inside the press department at the Emerson plant and

---

[1]Betty Stokes joined her husband and claimed a loss of consortium.

[2]A scissor lift is a platform that can be raised to allow the electrician to work at higher levels. Unlike forklifts and other industrial trucks, the scissor lift is powered by an electric motor triggered by toggle switches which allowed it to go right or left, forward or backward. These controls are designed for maneuvering into locations where the platform may be raised. There is no brake control; the brake engages automatically when the forward/backward toggle switch is in neutral. The scissor lift has two slots marked "Lift Here Only" for forklift carrying.

attempted to drive it down the nearest loading ramp. Stokes rode and controlled the scissor lift from the top of its platform which, at the time, was in its lowest position approximately five and a half feet off the ground. Stokes claims that approximately three quarters of the way down the ramp the scissor lift struck some rock or slag and veered off the ramp, injuring Stokes in the fall to the concrete below.

Suit was filed in state court against Emerson and Sky Climber, Inc., manufacturer of the scissor lift, for Stokes' injuries and his wife's loss of consortium. In due course the action was removed to the court *à quo*. Following discovery, Sky Climber was dismissed and a jury trial proceeded. Stokes testified about rock or slag on the ramp, but he did not suggest to the jury, and does not contend in this appeal, that the existence of any obstacle rendered the ramp a dangerous condition. Rather, Stokes maintained that the ramp was defective because the four-inch angle irons lining its edge were incapable of preventing a scissor lift from falling off. Emerson responded that the primary cause of Stokes' injuries was his own negligence, contending that he should have used a forklift to guide or carry the scissor lift out of the building and should have used a ramp with a more gradual incline. At a minimum, Emerson insists, Stokes should have walked alongside the lift, and not ridden it, as it went down the ramp. The jury returned a verdict for $700,000 in favor of Christopher Stokes and $150,000 in favor of his wife and assigned 60% comparative fault to

3

Stokes. The district court entered final judgment in the amounts of $280,000 and$60,000 in favor of Stokes and his wife, respectively.

After the verdict, Emerson renewed its motion for judgment as a matter of law, basing same on the proposition that Stokes' employer had control over the work that gave rise to the injury and knowledge of the alleged dangerous condition of the ramp, thus barring any claim by its employee under Mississippi law as interpreted by this court in **Hill v. International Paper Co.**[3] In the alternative, Emerson moved for a new trial, asserting that the trial court erred in not instructing the jury on either of the two exceptions to owner liability described in **Hill**. The district court denied both motions. Emerson timely appealed.

## ANALYSIS

We review the denial of a motion for judgment as a matter of law *de novo* and in accordance with the standards applied by the district court.[4] Judgment as a matter of law is appropriate if, after viewing the trial record in the light most favorable to the non-moving party, there is no "legally sufficient evidentiary basis" for a reasonable jury to have found for the prevailing party.[5] We review the denial

---

[3] 121 F.3d 168 (5th Cir. 1997).

[4] **Conkling v. Turner**, 18 F.3d 1285 (5th Cir. 1994).

[5] **Id.** at 1300-01, quoting Fed.R.Civ.P. 50(a); **Boeing Co. v. Shipman**, 411 F.2d 365 (5th Cir. 1969) (en banc).

4

of a motion for new trial for abuse of discretion.[6] Challenged jury instructions are reviewed to determine whether the instructions, as a whole, constitute a correct statement appropriately instructing the jurors about the principles of the law applicable to the facts of the case.[7]

This appeal requires a brief summary of the development of the Mississippi law of premises liability as it relates to contractors. At the outset, Mississippi followed the traditional rule that an owner of a premises owed a business invitee the duty to use "ordinary care to have his premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation."[8] With regard to latent dangers, the owner had a duty to remove or alleviate the danger, and if that could not be achieved with reasonable efforts, then a warning of the latent defect was mandated.[9] An owner owed no such duty with regard to dangerous conditions that were in plain view and clearly apparent to the invitee, *i.e.,* conditions that were deemed "open and obvious."[10]

---

[6]**Lubbock Feed Lots, Inc. v. Iowa Beef Processors**, 630 F.2d 250 (5th Cir. 1980).

[7]**United States v. Scott**, 159 F.3d 916 (5th Cir. 1998).

[8]**Mississippi Winn-Dixie Supermarkets v. Hughes**, 156 So.2d 734, 735 (1963).

[9]**Caruso v. Picayune Pizza Hut, Inc.**, 598 So.2d 770 (Miss. 1992); **McGovern v. Scarborough**, 566 So.2d 1225 (Miss. 1990).

[10]**Diamond Int'l Corp. v. May**, 445 So.2d 832 (Miss. 1984).

The relevant provisions of Mississippi law differed, however, when the injured party was an independent contractor, or the employee of an independent contractor. First, the owner had no duty to "protect [a contractor] against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair."[11] A corollary to this "intimately connected" exception held that a premises owner was not liable where the contractor assumed, "the right and fact of control of the premises and the nature and details of the work ... ."[12] Second, the owner was "not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees 'assumed the risk.'"[13] The "knowledge of danger" exception, in reality, was a particular application of the "open and obvious" rule. Specifically, dangerous conditions of which contractors had actual or constructive knowledge were deemed open and obvious to them, and therefore could not provide a basis for recovery.[14]

---

[11]**United Roofing and Siding v. Seefeld**, 222 So.2d 406, 408 (Miss. 1969), quoting 41 AM. JUR. 2D *Independent Contractors* § 28 (1968).

[12]**Magee v. Transcontinental Gas Pipe Line Corp.**, 551 So.2d 182, 185 (Miss. 1989).

[13]**Seefeld**, 222 So.2d at 408, quoting 41 AM. JUR. 2D *Independent Contractors* § 28.

[14]**Hill**, 121 F.3d at 176.

The Mississippi Supreme Court eliminated the open and obvious exception in **Tharp v. Bunge Corp**,[15] prescribing that a premises owner may no longer evade its duty with respect to open and obvious conditions, but must adhere to Mississippi's general rule for premises liability. The owner must make the premises reasonably safe and, failing that, must appropriately warn the invitee of the danger. Initially, it was unclear what effect, if any, **Tharp** might have on the "intimately connected" and "knowledge of danger" exceptions to owner liability which applied to cases involving independent contractors. **Tharp** was worded broadly and appeared to apply in all premises liability cases, including those involving independent contractors.

The Mississippi Supreme Court addressed this question in **Jones v. James Reeves Contractors, Inc.**,[16] and we made an "Erie guess" as to the effect of the **Jones** decision in **Hill**. In **Hill**, we concluded that the **Jones** court had affirmed the continued vitality of the "intimately connected" exception by holding that "Howard [the premises owner] did not owe McCaskill's employees any duty with respect to 'defects of the premises ... which the contractor has undertaken to repair.'"[17]

---

[15]641 So.2d 20 (Miss. 1994).

[16]701 So.2d 774 (5th Cir. 1997).

[17]**Hill**, 121 F.3d at 175, citing **Jones**, 701 So.2d at 782. In **Hill**, we also noted that the Jones court invoked the corollary to the intimately connected exception established in **Magee** as an

7

Further, we determined that the "knowledge of danger" exception survived **Tharp**

based on **Jones**' conclusion that "even if there existed a duty on the part of Howard

to make the premises safe, the only way in which the duty would remain intact is

if John McCaskill, Jr., as [independent contractor and] site supervisor, did not know

of the [dangerous] condition."[18] We held that, by reintroducing the contractor's

knowledge as a factor in determining the negligence of the premises owner, the

Mississippi Supreme Court brought "the 'open and obvious' bar back into

Mississippi law through the back door" in cases dealing with independent

contractors. Although **Hill** was specific about the continued existence of the two

exceptions, it remanded the case to the district court without any guidance as to

their application. We now must apply them in considering Emerson's assertion

that both exceptions apply in the case at bar.[19]

We conclude that the "intimately connected" exception does not apply.

alternative bar to recovery. **Hill**, 121 F.3d at 175.

[18]**Hill**, 121 F.3d at 175, citing **Jones**, 701 So.2d at 783.

[19]Preliminarily, Stokes asserts that neither exception applies because he was not an independent contractor at the time of the accident. He claims that he was an ordinary business invitee because he was only in the building to retrieve a piece of equipment which was maintained on Emerson's premises for the mutual benefit of Emerson and Carter Electric. Stokes did not submit this proposition to the district court, nor did he object to the applicability of **Hill** on this basis. Further, Stokes did not object to a jury instruction which charged that Carter Electric was an independent contractor and that its knowledge was imputed to Stokes. Arguments not raised in the district court cannot be asserted for the first time on appeal. **FDIC v. Mijalis**, 15 F.3d 1314, 1326-27 (5th Cir. 1994).

Stokes was not performing work under the contract at the time of the accident and the risk of falling off the ramp was not inherent in the performance of Carter Electric's services. The intimately connected exception charges the plaintiff-contractor with constructive knowledge of defects closely related to the project for which he has been hired. The contractor should know of the defects because of his familiarity with the work site and expertise in how to safely accomplish the project. Therefore, the exception applies only in instances in which the contractors' employees were injured while engaged directly in labor that was dedicated exclusively to the contractors' jobs and in the areas where those jobs must be performed. The cases applying this exception teach accordingly. In **Hill**, the contractor's employee was injured while carrying equipment through the sheet finishing room in which the contractor was upgrading structures on its paper cutting machines. In **Jones**, the contractor's employee was killed while installing a dewatering system necessary to complete the contract.[20] Similarly, in **Jackson Ready-Mix Concrete v. Sexton**,[21] the contractor, an electrician, was injured while he was, in furtherance of his duties under the contract, climbing a pole over which he had exclusive control.

---

[20]**Jones**, 701 So.2d at 783.

[21]235 So.2d 267 (Miss. 1970).

This view of the intimately connected exception was reinforced by the Mississippi Supreme Court's very recent decision in **Vu v. Clayton**.[22] Vu was hired as an independent contractor to install an ancillary air conditioning unit in an unfinished building. To complete the installation it was necessary to move from the installation site to another location in the building to connect the unit to its electrical power source. Vu was holding a flashlight for a co-worker when he stepped backward off the plywood walkway which was placed on the rafters leading to the air conditioning unit. He fell through an opening and severely injured his arm. The court noted that "Vu was on the premises and in the attic for the sole purpose of repairing the air conditioning system," and concluded, "[c]learly, the risk of falling through the ceiling arose from or was intimately connected with that enterprise."[23]

The present case is distinguishable from **Vu** and the other cases applying the intimately connected exception. These cases relied on the fact that the purpose of the contractor's presence on the involved premises and at the site of the accident was to perform under the relevant contract. The purpose of Stokes' visit to the Emerson plant was not to perform electrician services under the contract between

---

[22]2000 WL 798408 (June 22, 2000).

[23]**Id**. at *8-9.

10

Carter Electric and Emerson, nor was Stokes on the ramp for that purpose. It is undisputed that Stokes went to the plant to retrieve Carter Electric equipment which Emerson allowed to be stored on the premises. Carter Electric was not performing any services for Emerson requiring use of the scissor lift or the ramp in question. Clearly, Stokes' injuries did not arise out of and were not intimately connected to Carter Electric's electrical services to and for Emerson.

The "knowledge of the danger" exception, on the other hand, does not require such a close nexus between the dangerous condition and the work the contractor is obligated to perform. That rule rests on the premise that under circumstances where the contractor has knowledge of the condition, his ability to avoid the harm is equal to that of the owner of the premises.[24] The ability of the contractor to avoid injury where he knows that a dangerous condition exists does not depend on his control over the manner in which the work is performed or his reason for being on the premises. Under circumstances such as these, where the contractor is merely traversing the owner's premises, he reasonably can be expected to use his knowledge of dangerous conditions to avoid falling victim to

_____

[24]**Jackson Ready-Mix Concrete**, 235 So.2d at 270, citing 38 AM JUR. *Negligence* § 97 (1941) ("The basis of the inviter's liability for injuries sustained by the invitee on the premises rests on the owner's superior knowledge of the danger, and as a general rule, he is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or should have been observed by the invitee in the exercise of reasonable care ... .").

them. Thus, Mississippi cases have applied the "knowledge of danger" exception where the contractor was not performing under the contract and did not have control over the portion of premises where the injury occurred.[25]

According to Stokes, the dangerous condition that existed at the Emerson plant was the fact that the ramp was outfitted with four inch angle irons which were not sufficient to prevent vehicles, like the scissor lift, from going over the edge. Emerson counters that Stokes knew that there was nothing to prevent the scissor lift from going over the side of the ramp, and thus he had knowledge of the allegedly dangerous condition.[26] Stokes' testimony supports this assertion. He testified that he had been in the Emerson plant on a regular basis and knew the plant "pretty good." He also testified that he was knowledgeable about the ramps and, when asked whether he knew on the day of the accident that the ramps did not have

---

[25]**General Tire & Rubber Company v. Darnell**, 221 So.2d 104 (Miss. 1969) (employee of contractor injured on elevator which was taking him to second floor work site); **Mississippi Power & Light Company v. Nail**, 211 So.2d 815 (Miss. 1968) (employee of contractor killed when he strayed into area of high voltage equipment which specifically was not to be serviced under the contract); **Mississippi Chemical Corp. v. Rogers**, 368 So.2d 220 (Miss. 1979) (employees of contractor injured while walking on transit roof after having been cautioned to walk on designated walkways only).

[26]Emerson also contends that the dangerous condition was not the ramp, but the fact that Stokes drove the scissor lift down the ramp. Stokes has not alleged that this was a dangerous condition for which the premises owner was liable, however, and has not attempted to recover on any theory that depends on this conclusion. Further, the act of driving the scissor lift down the ramp was not a condition *of the premises*. The danger created by Stokes' allegedly negligent behavior is more appropriately considered, and indeed was considered, in determining his comparative fault.

"elaborate handrail system[s]" along the side, he responded in the affirmative. As to the particular ramp involved in the accident, he testified that he did not recall seeing the four inch angle irons or anything else on the ramp that might have prevented the scissor lift from going over the ramp's edge. He further acknowledged that he knew he was near a "dropoff" at the time of the accident.[27]

We must conclude and hold that there was ample evidence before the trial court that Stokes had actual knowledge of the allegedly dangerous condition he claims caused his injury. The district court therefore erred by declining to instruct the jury on Mississippi's knowledge of the danger exception in premises liability cases involving independent contractors. Accordingly, we must VACATE the judgment appealed and REMAND for a new trial.

---

[27]Q:   [The SkyClimber Operating and Safety Instructions Manual] says, "Do not drive near a dropoff." Were you near a dropoff at the time of this accident?

Stokes:   Yes.

Q:   [If you had read this and other warnings in the manual] would you have on the day of this accident drove the scissor lift down that ramp?

Stokes:   If I had read that, I probably wouldn't have.