REVISED APRIL 30, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-30993

MILFRED J. NUNEZ

Plaintiff - Appellee - Cross-Appellant

VERSUS

B & B DREDGING, INC. ET AL

Defendants

CLARENDON AMERICA INSURANCE COMPANY

Defendant - Appellant - Cross-Appellee

Appeals from the United States District Court
For the Eastern District of Louisiana, New Orleans

April 23, 2002

Before GARWOOD, JOLLY and DAVIS, Circuit Judges

W. EUGENE DAVIS, Circuit Judge:

The question in this case is whether a land-based employee who is permanently assigned to work in the service of a vessel but who spends only 10% of his time working aboard the vessel may enjoy seaman status. We hold that such an employee is not a seaman.

Milfred J. Nunez was employed by B&B Dredging, Inc. (B&B) for two years. During the last 18 months of his employment, his work was in relation to the M/V DREDGE BATON ROUGE. He first worked on the construction of the M/V DREDGE BATON ROUGE in the shipyard. After she was commissioned and began dredging work, he followed the dredge as dredge dump foreman. In this role, Nunez oversaw the discharge of dredge soil on or near the bank of the waterway in which the dredge was operating. This included building, monitoring, and changing dredge spoil sites, where the dredge empties silt into piles on the shore. Although he traveled across water to the dredge twice a day to report to his supervisor and occasionally ate meals onboard, it is uncontested that Nunez performed 90% of his work on land.

On September 4, 1997, the M/V BATON ROUGE had been engaged for about three months in dredging a section of the Florida Intercoastal Waterway for the U.S. Army Corps of Engineers. While performing his duties on that date as dump foreman, Nunez began to sink into the silt. In order to escape, he climbed onto the back of a track hoe, but when he attempted to walk across the left track, the housing of the track hoe rotated, causing the body of the machine to hit Nunez's left shoulder and throw him approximately twenty feet in the air. Nunez suffered serious injuries as a result.

Nunez sued B&B and its insurer, Clarendon America Insurance

Company (Clarendon), asserting claims for negligence under the Jones Act,[1] and unseaworthiness, maintenance, and cure under general maritime law.[2] B&B and Clarendon moved for summary judgment, arguing that Nunez was not a seaman under the Jones Act, which the court denied. Then Nunez moved for summary judgment on the same issue; the court granted the motion, holding that Nunez was a seaman as a matter of law. After a trial, the court awarded Nunez damages and entered final judgment. B&B and Clarendon then lodged this appeal.

## II.

B&B argues that the district court erred by finding that Nunez was a seaman as a matter of law. We agree with B&B for the reasons that follow.

## A.

Over 40 years ago this Circuit in Offshore Company v. Robison, established a test for seaman status.[3] We stated that:

there is an evidentiary basis for a Jones Act case to go to

---

[1] 46 U.S.C. §§ 688 et seq.

[2] Nunez also sued the owner, operator, and insurer of the track hoe. The owner settled with Nunez before trial. After trial, the district court held that the operator of the track hoe had not abandoned his relationship with the hoe's owner and had worked in furtherance of the business of both the owner and B&B. Thus, the court held both companies jointly liable for his negligence, and since the owner had already settled for its half, it reduced Nunez's damage award by half. Nunez cross-appeals this reduction. Our holding on the issue of seaman status renders this cross-appeal irrelevant.

[3] Robison, 266 F.2d 769, 779 (5th Cir. 1959).

the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.[4]

The Supreme Court in a series of cases beginning in 1991 essentially accepted this Circuit's seaman status test.[5] In Chandris v. Latsis,[6] the Court established a two-part test to determine seaman status that essentially tracked this Circuit's test in Robison and this Court's 1986 en banc opinion in Barrett v. Chevron.[7]

The Supreme Court stated the test as follows:

First ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission ... Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its

---

[4] *Id.* at 779. *See also* Palmer v. Fayard Moving and Transp. Corp., 930 F.2d 437, 439 (5th Cir. 1991) (noting that the Supreme Court endorsed the Robison test in McDermott Int'l., Inc. v. Wilander, 498 U.S. 337, 354-55, 111 S.Ct. 807, 817 (1991)).

[5] *See* Wilander; Chandris, Inc. v. Latsis, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190 (1995); and Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 554, 117 S.Ct. 1535, 1540 (1997).

[6] Chandris, 515 U.S. 347, 115 S.Ct. 2172 (1995).

[7] Barrett, 781 F.2d 1067 (5th Cir. 1986) (en banc).

nature.[8]

It is uncontested that Nunez's job as dump foreman contributed to the function and mission of the vessel.  An essential function of a dredge is to remove soil and silt from the seabed of the waterway where the dredge is working.  That spoil must be disposed of in an orderly fashion on the shore for the dredge to perform its function.  Because Nunez was performing this essential job that allowed the dredge to perform her work, the first prong of the Supreme Court's seaman status test is satisfied.  We therefore turn our attention to the second prong: whether Nunez's connection to the dredge BATON ROUGE was substantial in terms of both its duration and its nature.

B.

We are satisfied that the Supreme Court's analysis in <u>Chandris v. Latsis</u> resolves this question.  In <u>Chandris</u>, plaintiff Latsis sued his employer and sought recovery as a seaman under the Jones Act.  Latsis was a salaried engineer responsible for maintaining and updating the electronic and communications equipment on Chandris's fleet of six passenger ships.  He planned and directed ship maintenance from shore and was also required to take voyages on the ships in the fleet to perform his job.  He also spent some time supervising the vessels' refurbishment in the shipyard.

---

[8] <u>Hufnagel v. Omega Service Industries, Inc.</u>, 182 F.3d 340, 346 (5th Cir. 1999), *quoting* <u>Harbor Tug</u>, 520 U.S. at 554, 117 S.Ct. at 1540 (1997) (*quoting* <u>Chandris</u>, 515 U.S. at 368, 115 S.Ct. at 2190 (1995)) (citations and internal quotation marks omitted).

The Court clarified what "employment related connection to a vessel in navigation" is necessary for a maritime worker to qualify as a seaman under the Jones Act.

The Court first discussed the fundamental purpose of the requirement that a seaman have a substantial connection to his vessel:

> ... [M]ost important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. This requirement therefore determines which maritime employees in Wilander's broad category of persons eligible for seaman status because they are "doing the ship's work," are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.[9]

The Court emphasized that the worker's connection to the vessel must be substantial in both its duration and nature. The Court explained:

> The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based

---

[9] Chandris, 515 U.S. at 368-69, 115 S.Ct. at 2190 (internal citation omitted).

employee who happens to be working on the vessel at a given time.[10]

The Court disagreed with the Court of Appeals that the seaman's connection to a vessel had no temporal requirement. The Court stated "a maritime worker who spends only a small fraction of his working time onboard a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are."[11]  The Court stated further that "generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: a worker who spends less than about 30% of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[12]

Nunez points to the Robison test authorizing a finding that the employee has the requisite connection to a vessel if he was: ..."assigned permanently to a vessel..." or ..."performed a substantial part of his work on the vessel."  He argues that this test is disjunctive and because he was permanently assigned to the dredge BATON ROUGE as the dump foreman the district court correctly found that he had the requisite connection to a vessel.  We disagree.  This interpretation ignores the Supreme Court's teaching in Chandris that a seaman's connection with a vessel includes a temporal requirement, i.e. that the worker spend a substantial part

---

[10] *Id.* at 370, 115 S.Ct. at 2190-91.

[11] *Id.* at 371, 115 S.Ct. at 2191.

[12] Id.

7

of his work time aboard the vessel.  Were we to accept Nunez's argument, we would remove this requirement.  In other words, Nunez would have us adopt a rule -- contrary to <u>Chandris</u>'s directions -- that any worker whose duties contribute to the function or the mission of the vessel is a seaman without regard to whether that worker ever sets foot on the vessel.  Such an interpretation would introduce a host of land-based employees as potential Jones Act seamen simply because their work supports the vessel's mission.

In <u>Palmer v. Fayard Moving and Transp. Corp.</u>, a land-based employee such as Nunez sought recovery under the Jones Act.[13]  Ms. Palmer, the plaintiff in that case, was a land-based public relations officer whose job was entirely devoted to promoting a single vessel, the M/V FRANCIS FAYARD.  Ms. Palmer's duties included writing letters promoting the use of the vessel, acting as liaison with clients, researching the history of the ship, and setting up trips on the vessel.  She spent approximately 19% of her working hours aboard the ship preparing the social areas of the ship and cleaning it before and after social events.  Despite the fact that Palmer – like Nunez – spent 100% of her time furthering the mission or function of the vessel, we concluded that she was not eligible for seaman status because the time she spent aboard the vessel was insubstantial.

If we were to accept Nunez's argument, we would expand the

---

[13] <u>Palmer</u>, 930 F.2d 437 (5th Cir. 1991).

8

ranks of potential Jones Act seamen to all land-based employees who further the mission or function of the vessel, from salesmen to payroll clerks to corporate executives. Neither the law of the Supreme Court or of this Circuit will permit such a bizarre result.

### III.

For a worker such as Nunez who divides his work time between the shore and the vessel, he must demonstrate that he spends a substantial part of his work time aboard the vessel in order to demonstrate that he has the requisite connection to a vessel in order to qualify for seaman status. Nunez spent approximately 10% of his work time aboard the dredge BATON ROUGE. Because this is an insubstantial part of his work time, he does not qualify for seaman status. Because Nunez is not a seaman as a matter of law, we reverse the judgment of the district court and render judgment in favor of B&B.

REVERSED AND RENDERED.