Robert TEAVER, Plaintiff—Appellant

v.

SEATRAX OF LOUISIANA, INCORPORATED, Defendant—Appellee.

No. 11–30084
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 23, 2011.

---

*·Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Philip Francis Cossich, Jr., Darin Stephen Britt, Esq., David Allen Parsiola, Brandon J. Taylor, Esq., Cossich, Sumich, Parsiola & Taylor, L.L.C., Belle Chasse, LA, for Plaintiff–Appellant.

Henry Harvey Lebas, Lebas Law Offices, A.P.L.C., Lafayette, LA, for Defendant–Appellee.

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM: *

Plaintiff Robert Teaver appeals the district court's orders denying his motion to remand and granting summary judgment to his employer on his claim brought under the Jones Act, 46 U.S.C. § 30104. We affirm the district court's rulings because there is no possibility that Teaver can establish he was a seaman for purposes of Jones Act liability.

## I. BACKGROUND

Seatrax of Louisiana, Inc. ("Seatrax") provides cranes for offshore drilling platforms. Seatrax hired Robert Teaver as a crane operator/installer, and Teaver received his first work assignment on June 21, 2009. He and several other Seatrax employees were charged with disassembling a portable crane on an offshore platform owned by Mariner Energy, Inc. ("Mariner"), which was located approximately 90 miles off the coast of Louisiana. For their assignment, which was expected to last three days, the Seatrax employees were to board the M/V CHERAMIE # 34 ("CHERAMIE"), travel on the CHERAMIE to the platform, disassemble the crane, load the crane onto the CHERAMIE, and travel back to shore. The CHERAMIE was owned by L&M BoTruc Rental, Inc. ("L&M"), and Mariner had time-chartered the vessel. Although it is unclear whether L&M or Mariner provided the crew for the CHERAMIE, it is clear that the vessel was not operated by Seatrax employees. Due to the unsuitable conditions in the living quarters on the platform, the Seatrax employees would be eating and sleeping aboard the vessel.

After boarding the CHERAMIE on June 21, Teaver inspected equipment and tools that had already been loaded on the vessel, participated in a meeting regarding the project, ate, slept, and participated in another meeting. Following the second meeting, on the morning of June 22, Teaver disembarked the vessel and operated a crane on the platform to offload the tools and equipment the Seatrax employees needed to disassemble the crane. The unloading of the tools and equipment took approximately three and a half hours. The remaining Seatrax crew members then moved to the platform, and they began disassembling the crane. About thirty minutes into the project, less than twenty-four hours into his employment with Sea-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

trax, Teaver fell approximately nineteen feet from his position on a gang box. The injuries he sustained in the fall left him permanently paralyzed.

Teaver filed a petition in Louisiana state court, alleging a Jones Act claim against Seatrax and a claim of negligence under Louisiana state law against Mariner.[1] Mariner removed the suit to the District Court for the Eastern District of Louisiana, claiming federal jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.*, and arguing that the Jones Act claim did not prevent removal because Teaver did not qualify as a seaman under the Jones Act. Seatrax consented to the removal. Teaver filed a motion to remand, which the district court denied after concluding that Teaver could not possibly establish his status as a seaman. The district court then granted Seatrax's motion for summary judgment on the same ground, dismissing Seatrax from the suit. The district court granted Teaver's request for a Rule 54(b) judgment and stayed the litigation so Teaver could appeal the district court's rulings regarding Seatrax.

## II. DISCUSSION

Teaver argues that the district court erred in refusing to remand this action to state court and in granting summary judgment to Seatrax. We review both a denial of a motion to remand and the grant of summary judgment de novo. *Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir.2006).

Jones Act cases are generally not removable from state court. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995). However, in certain circumstances,

" 'defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal.' " *Id.* (quoting *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir.1993)). To determine whether to retain jurisdiction or remand the case, the district court may use a "summary judgment-like procedure" and "must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in favor of the plaintiff." *Id.* at 176. The defendant bears the burden of showing that " 'there is no possibility that plaintiff would be able to establish a cause of action' " *id.* (quoting *Lackey*, 990 F.2d at 207), and the district court may deny remand only if it "determine[s] that *as a matter of law* there was no reasonable basis for predicting that the plaintiff might establish liability," *id.* (alteration in original) (citation and internal quotation marks omitted).

The pertinent issue on appeal is whether Teaver could possibly establish that he was a Jones Act seaman. The question whether Teaver was a seaman is a mixed question of law and fact. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). To qualify as a seaman under the Jones Act, a plaintiff must demonstrate that (1) his duties "contribute to the function of the vessel or to the accomplishment of its mission," and (2) he has "a connection to a vessel in navigation (or an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* at 368, 115 S.Ct. 2172 (citation, internal quotation marks, and alteration omitted). "[T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who hap-

---

1. Teaver also named Nova Technical Services, Ltd. ("Nova") and Corey Sauce, a Nova employee, as defendants in the lawsuit. Sauce was present during the crane disassem-

bly, and may have supervised the project, but it is unclear what relationship Nova had with either Mariner or Seatrax.

pens to be working on the vessel at a given time." *Id.* at 370, 115 S.Ct. 2172. The district court found that Teaver would be unable to establish either element of the *Chandris* test for seaman status under the Jones Act. We agree.

This case is governed by our decision in *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340 (5th Cir.1999). In that case, the plaintiff, Hufnagel, worked for a company that provided crews to construct and repair offshore oil and gas platforms. *Id.* at 344. After he was injured while working on a platform, Hufnagel claimed that he was a Jones Act seaman. *Id.* at 345. Hufnagel argued that, although he was injured on the platform, he qualified as a seaman because the platform owner had provided "an adjacent jack-up boat," the AMBERJACK, which Hufnagel and his fellow workers used as temporary work space and sleeping quarters. *Id.*

We held that Hufnagel could not qualify as a seaman as a matter of law. *Id.* at 348. Hufnagel did not contribute to the function of the AMBERJACK or the accomplishment of its mission because Hufnagel's "sole purpose for being present on the platform or the AMBERJACK related to the repair of the platform"; his duties were unrelated to the navigation, maintenance, or voyage of the vessel. *Id.* at 347. Hufnagel also could not demonstrate a substantial connection to any vessel or fleet of vessels because, although Hufnagel often slept on a vessel during his assignments, the vessel for each of his assignments had been different and Hufnagel's connection to each vessel, including the AMBERJACK, was "transitory and fortuitous." *Id.* Furthermore, Hufnagel's employer did not own or control the vessel, and Hufnagel was not a borrowed servant of the vessel or its owner. *Id.* at 346.

Despite this court's pronouncement in *Hufnagel* that workers aboard vessels that transport them to their work stations on offshore drilling platforms are not seaman, even when the transportation vessel also serves as a "floating hotel" during the work assignment, Teaver argues that he was a seaman because he was working in service of the CHERAMIE throughout his employment. Importantly, Teaver does not claim that he was a member of the vessel's crew, that he took direction from the captain of the vessel, or that he was a borrowed servant under an agreement between his employer and the vessel's operator. The undisputed facts reveal that the CHERAMIE performed the same function as any supply vessel—it provided transportation and lodging services for the Seatrax employees and their equipment, and the Seatrax employees were merely passengers on the vessel. Therefore, Teaver, like Hufnagel, cannot demonstrate that he was a Jones Act seaman. As in *Hufnagel*, Teaver's duties in no way "contribute[d] to the function of the vessel or to the accomplishment of its mission," *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172, and Teaver's connection to the vessel was "transitory and fortuitous," *Hufnagel*, 182 F.3d at 347.

Nonetheless, Teaver attempts to distinguish this case from *Hufnagel* on two bases. First, Teaver argues that his work was in service of the vessel because he claims that the mission of the CHERAMIE, which he frames as "retrieving the Seatrax portable crane from the Mariner platform," Appellant's Br. at 14–15, was broader than the mission of the AMBERJACK in *Hufnagel*. Even construing the mission of the CHERAMIE to include return of the portable crane, Teaver did not contribute to the vessel's transportation mission or work in service to the vessel simply because he was to participate in the disassembly and loading of the crane. Moreover, the fact that Teaver and the Seatrax employees were to accompany the

disassembled crane back to shore does not transform Teaver into a seaman.

Second, Teaver claims that he, unlike Hufnagel, had a substantial connection to the CHERAMIE because it was the only vessel on which he worked while he was employed by Seatrax and twenty of his first twenty-four hours on the job were spent aboard the vessel. Given the nature of Teaver's connection to the CHERAMIE, he cannot claim seaman status simply because he was injured early in his tenure with Seatrax. In *Chandris,* the Supreme Court cautioned against employing a "snapshot" test for seaman status, examining only the instant of injury, because "a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured." 515 U.S. at 363, 115 S.Ct. 2172. Thus, we must examine the entire scope of Teaver's job assignment, not simply the first twenty-four hours before he was injured. *See Foulk v. Donjon Marine Co.,* 144 F.3d 252, 259 (3d Cir.1998) (holding that seaman status for a worker injured after only half a day of work is determined by "consider[ing] his intended relationship [to the vessel], as if he had completed his mission uninjured"). Teaver's entire assignment for Seatrax was to disassemble the crane on the platform and help load the disassembled crane onto the CHERAMIE. Although he stored equipment, attended meetings, slept, and ate aboard the vessel, his contemplated work assignment was almost entirely on the platform. *See Becker v. Tidewater, Inc.,* 335 F.3d 376, 391 (5th Cir.2003) (land-based intern temporarily assigned to serve as a vessel crew member was not a seaman because his work "[did] not constitute the kind of regular or continuous commitment of his labor to the service of that vessel that regularly exposed him to the perils of the sea").

Because Teaver neither contributed to the work of the vessel nor had a substantial connection to the vessel, there is no reasonable possibility that he can demonstrate seaman status under the Jones Act. Therefore, the district court did not err in refusing to remand the case to state court or in granting summary judgment to Seatrax.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.